# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

J & J SPORTS PRODUCTIONS, INC.,    )
        )
    Plaintiff,      )
        )
v.        )    Cause No. 1:15-CV-257
        )
LEONOR NAVARRO, individually and    )
d/b/a LA SANTA ANITA FAMILY    )
GRILL; SERGIO NAVARRO, individually  )
and d/b/a LA SANTA ANITA FAMILY    )
GRILL; and NAVARRO FAMILY    )
RESTAURANT LLC, an unknown    )
business entity d/b/a LA SANTA ANITA    )
FAMILY GRILL,    )
        )
    Defendants.      )

## OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Plaintiff J & J Sports Productions, Inc., on November 21, 2016 (docket entry 17). Defendants Leonor and Sergio Navarro, d/b/a La Santa Anita Family Grill, filed a response in opposition to the motion on December 13 (DE 19)[1] and J & J Sports filed a reply brief on December 16 (DE 21). For the reasons set forth below, the motion is GRANTED in part and DENIED in part. The Clerk of the Court is directed to enter judgment in favor of the Plaintiff and against the Defendants in the amount of $4,725.75, consisting of statutory damages of $3,200.00 and attorney's fees and costs in the amount of $1,525.75. The motion is DENIED as to the Plaintiff's claim for enhanced

---

[1] The Defendants filed a document titled "Defendants' Motion in Opposition to Plaintiff's Motion for Summary Judgment" (DE 19), a one-paragraph statement that simply summarizes the grounds for the Defendants' opposition. This is not a motion and the title is likely just a scrivener's error. In any event, the Defendants' substantive arguments are set forth in their response brief, which appears at docket entry 20 and was filed simultaneously with the misnamed "motion."

damages, conversion, and punitive damages, and those claims are DISMISSED WITH PREJUDICE.

## BACKGROUND

J & J Sports is a California corporation that owns the licensing rights to satellite and cable broadcasts of sporting events, including professional boxing matches. J & J Sports contracts with entities across the country (including restaurants and sports bars and the like) to permit those entities to broadcast the fight in their establishments. The establishment then receives the broadcast signal and permission to exhibit the broadcast to its patrons. It is common knowledge that individuals and businesses often intercept satellite and cable signals in order to view a broadcast without paying for it.[2] J & J Sports alleges that the Defendants did just that on September 14, 2013, by intercepting its signal and broadcasting a televised light middleweight championship match between Floyd Mayweather, Jr., and Saul Alvarez in their establishment known as La Santa Anita Family Grill. Complaint, p. 4.[3] J & J Sports alleges that "on September

---

[2] There are many ways people can pirate television broadcasts, as explained in an affidavit submitted by Joseph Gagliardi, the president of J & J Sports. Affidavit of Joseph M. Gagliardi (DE 21-1), pp. 3-4. These methods run from purchasing devices that "allow for the descrambled reception of a pay-per-view broadcast," to "[t]he intentional misrepresentation of a commercial establishment as a residential property . . ." in order to purchase a broadcast at a lower residential rate, or to using "illegal unencryption devices, and the purchase of illegal satellite authorization codes . . . ." *Id.*, pp. 3-4. According to Gagliardi, the piracy of broadcasts erodes J & J Sports' customer base and bottom line (and presumably has the same impact on other businesses who provide similar services) and that such acts of piracy have "resulted in our company's loss of several millions of dollars of revenue[.]" *Id.*, p. 4. He explains that such conduct also affects lawful customers, "whose costs of service are increased significantly because of these illegal activities[.]" *Id.*

[3] J & J Sports states in its Complaint that "Defendant Navarro Family Restaurant LLC is specifically identified on the Indiana Alcohol & Tobacco Commission license issued for Navarro Family Restaurant LLC (Permit Number RR0223275) and Leonor Navarro is the Registered Agent of Navarro Family Restaurant LLC." Complaint, p. 2.

14, 2013 (the night of the Program at issue herein . . .), Defendants Leonor Navarro and Sergio Navarro specifically directed the employees of La Santa Anita Family Grill to unlawfully intercept and broadcast Plaintiff's Program at La Santa Anita . . . or that the actions of the employees . . . are directly imputable to Defendants Leonor Navarro and Sergio Navarro by virtue of their acknowledged responsibility for the actions of La Santa Anita[.]" *Id.*, p. 3. J & J Sports contends that "[w]ithout the authorization of Plaintiff, Defendant[s] unlawfully intercepted and exhibited and divulged the Program at Defendants' commercial establishment La Santa Anita Family Grill[.]" Plaintiff's Memorandum in Support of Motion for Summary Judgment (DE 18), p. 1.

At first glance, it might seem odd that a one-time "pirating" of a televised boxing match by a small bar or restaurant would be the subject of a federal lawsuit, let alone a lawsuit in which the Plaintiff seeks more than $110,000 in damages from that small establishment. The problem for the Defendants is that pirating a broadcast signal violates 47 U.S.C. §§ 553 and 605 of the Federal Communications Act, commonly referred to as the "piracy statutes." Complaint, pp. 4-6. According to J & J Sports, this illegal pirating of broadcasts has a direct and substantial impact on the company's bottom line. *See* Gagliardi Affidavit, p. 5, ¶ 12 ("We at J & J Sports . . . believe that the persistent signal piracy of our programming costs our company, our customers, and their communities, millions of dollars annually . . . for such unlawful interception and exhibition by the commercial signal pirates."). Therefore, J & J Sports employs "auditors" who are paid to go to various establishments suspected of pirating broadcast signals to see first-hand what is going on ("piracy spies," of a sort). In this case, James A. Berndt served in this capacity and went to La Santa Anita on the night of the fight, observed part of the pirated broadcast, and

reported his findings to J & J Sports. Plaintiff's Memorandum, Affidavit of James A. Berndt (DE 21-2). Berndt reported that "on Saturday, September 14, 2013, at approximately 10:30 p.m. . . . I . . . entered [La Santa Anita and] observed approximately 6-8 tables filled about half capacity with a crowd of primarily Hispanic patrons. . . . I observed one (1) television on the north wall of the restaurant: an approximately 40" (LG brand) flat-screen. The television was displaying" the boxing match licensed to J & J Sports. *Id.*, p. 1. Berndt reported that "[t]he [seating] capacity of this establishment is approximately 30 people. During my time in this location, I estimated the number of patrons as between 12 and 15[.]" *Id.*, p. 2. Based on these facts, J & J Sports filed this suit against the Defendants seeking damages for the illegal pirating of J & J Sports' broadcast signal.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*,

209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

## DISCUSSION

This is the latest in a series of cases filed in this District over the past several years by J & J Sports in which the company seeks to recover damages (usually tens of thousands and often more than $100,000 per case) from defendants who intercept satellite or cable signals to broadcasts to which J & J Sports owns the licensing rights. Most of these cases involve the interception of a signal to a professional "pay-per-view" boxing match, as was the case here. In many instances, the defendants are very small "mom and pop" bars and restaurants[4] who never answer or otherwise respond, so J & J Sports takes a default and then files a motion for damages, fees and costs. In this case, however, the Defendants answered the complaint *and* responded to the motion for summary judgment. In their response, the Defendants (somewhat reluctantly)

---

[4] That is also the case here. Defendants Leonor and Sergio Navarro own and operate a small bar/restaurant known as La Santa Anita, which the Plaintiff's evidence shows has a seating capacity of only 30 people. Berndt Affidavit, p. 2.

5

concede liability and so the primary issue before the Court is the amount of damages to award to J & J Sports.[5]

J & J Sports is correct that it is entitled to damages, attorney fees, and costs as a result of the Defendants' conduct, and the company is not shy about asking for all damages to which it is arguably entitled. In this case, J & J Sports seeks "statutory damages for each willful violation in an amount to $100,000.00 pursuant to . . . [§] 605(e)(3)(C)(ii)," "statutory damages for each violation in an amount to $10,000.00 pursuant to . . . [§] 553(c)(3)(A)(ii)[,]" "statutory damages for each willful violation in an amount to $50,000.00 pursuant to . . . [§] 553(c)(3)(B)[,]" exemplary damages, punitive damages, costs, and attorney fees. Complaint, pp. 5-8. In other words, J & J Sports' Complaint seeks an award of damages of over $160,000.00.[6]

---

[5] For reasons explained below, the Defendants concede liability and state that "[s]ummary judgment should be focused upon the damages issue." Defendants' Brief in Opposition (DE 20), p. 7. To be sure, the main issue here is the damages issue, but it is not the *only* issue raised by the Plaintiff's motion for summary judgment. J & J Sports' state law claim for conversion, which is based on the same underlying facts, and its concomitant claim for punitive damages, are discussed later in this opinion, even though neither party devoted any space in their briefs to discussing them.

[6] J & J Sports apparently requests the maximum amount of damages in most or all of the "piracy" lawsuits it files. In the handful of cases this judicial officer has presided over, J & J Sports has requested the maximum amount of statutory damages, enhanced damages, punitive damages, and fees and costs, totaling more than $100,000.00 per case. This Court has not granted the maximum award in any of those cases, and will not do so in this one, since the factual circumstances in each case do not warrant imposition of such a large damage award. In fact, at least one district court expressed concern about J & J Sports' litigation tactics and admonished the company for requesting huge monetary awards in cases where the facts do not support them. That district court noted: "In a prior case, *J & J Sports Productions, Inc. v. Richard Jesus Garcia*, . . . this Court admonished Plaintiff and Plaintiff's counsel for requesting the maximum amount of statutory penalties when such a request did not appear to have any justification based upon the circumstances specific to the case and the evidence presented." *J & J Sports Productions, Inc. v. Montano*, 2013 WL 1680633 *8 n. 4 (E.D.Ca. April 17, 2013). This Court echoes that observation and J & J Sports would be wise to heed that admonition.

In their response, the Defendants concede liability but still oppose J &J Sports' motion "on the grounds that there is an issue of genuine dispute and the Plaintiff is not entitled to judgment as a matter of law *as to the amount of damages* sought." Defendants' "Motion" in Opposition (DE 19), p. 1 (italics added). The Defendants state that they "have admitted that they intercepted, exhibited and showed the [Mayweather/Alvarez broadcast] to the restaurant patrons." Defendants' Brief, p. 5. They maintain, however, that they "were not aware that it was unlawful or a violation." *Id*. (citing affidavits of Leonor Navarro (DE 20-1) and Sergio Navarro (DE 20-2)). This is important because it is relevant to an assessment of damages, but more on that point later.

The Defendants have little choice but to concede liability since §§ 553 and 605 are "strict liability" statutes. As J & J Sports points out, "[b]ecause this is a strict liability statute, it is *not* necessary for Plaintiff to establish willfulness . . . in order to establish liability." Plaintiff's Memorandum, p. 6 (citing 47 U.S.C. § 605(e)(3)(C)(iii) and 47 U.S.C. § 553(c)(3)(C)). The company adds that "even if Defendant[s] w[ere] unaware of [their] violation, or if [they] did not intend to broadcast Plaintiff's Program unlawfully, Defendant[s] would still be liable." *Id*. (citing *J & J Sports Productions, Inc. v. Mendoza-Gowan*, 2011 WL 1544886 at *6 (N.D. Cal. April 25, 2011)).

The relevant portion of § 605 states as follows:

(C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

(I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; . . . or

(II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just. . . .

(ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

(iii) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

47 U.S.C. § 605(e)(C)(i)-(iii). The relevant portion of § 553 states as follows:

(3)(A) Damages awarded by any court under this section shall be computed in accordance with either of the following clauses:

(i) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; . . . or

(ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.

(B) In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.

(C) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100.

47 U.S.C. § 553(3)(c)(A)-(C). (Section 553 may or may not be applicable in this case, as discussed below.)

Notwithstanding the strict liability nature of the statutes, the Defendants assert that their violation resulted because they "caused to be paid $80.00 to an unknown vendor to show the Program. This unknown vendor programmed the TV system and the [Defendants] did not participate in such programming." Defendants' Brief, p. 2. They also point out–and these facts are undisputed–that they "did not advertise the Program[,]" "did not charge a cover charge" to patrons, that the fight "was shown on a single TV monitor[,]" that there were only about 16 customers in La Santa Anita that night, that "[t]his was the only time that the [broadcast] was shown" (i.e., this was their first and only "offense"), and that the Defendants' "total sales for September 14, 2013 were $326.33[.]" *Id*., p. 2 (citing Leonor Navarro Aff., ¶¶ 4-11; Sergio Navarro Aff., ¶¶ 4-11). In short, the Defendants claim they trusted a person who represented that he could "sell" them the subject broadcast for $80.00, that they have not done this before or since, the did not advertise the fight to try to attract patrons, and that their financial gain, if any, was minuscule. The Defendants argue that the Court should take these factors into account when determining the amount to be awarded in this case, and they are correct.

Given that the Defendants concede liability (because what choice do they have, given the wording of the statutes?), their factual assertions regarding what happened might at first seem like irrelevant excuses for what J & J Sports calls their "nefarious" behavior. But there is more to it, because the Defendants' argument that they did not willfully steal J & J Sports' Program is relevant to the issue of damages, even though it doesn't help them in terms of liability. The Defendants argue that "[t]he only willful or intentional action by the Defendants was the misguided purchase of the ability to show the Program without any technical intervention by the Defendants." Defendants' Brief, p. 7. The Defendants argue that these facts "mitigate or at least

minimize [any] commercial advantage or private financial gain." *Id.* Finally, the Defendants

point out (by quoting from J & J Sports' own memorandum at page six, where the quotation

appears) that "[I]f it is later found that defendant acted unknowingly, damages under Section 553

or Section 605 may be reduced[.]" Defendants' Response, p. 5 (quoting Plaintiff's Memorandum,

p. 6, in turn quoting *J & J Sports Productions, Inc. v. Mendoza-Gowan*, 2011 WL 1544886 at *6

(N.D. Cal. April 25, 2011)). (The district court in *Mendoza-Gowan* added that "[t]his point is

irrelevant, however, for determining liability." *Mendoza-Gowan* at *6.) So, since there is no

dispute that the Defendants are liable for damages, the Court must calculate a fair award. This

process is more complicated than it might sound, for all the reasons discussed below.

### I. Statutory damages.

An important preliminary matter must be addressed. Although J & J Sports pleads claims

under both § 553 and § 605, the company fails to state which statute it is relying on to recover

damages. As J & J Sports knows, since the company was a party to cases in which this issue was

discussed, it is "permitted to plead its § 553 and § 605 claims in the alternative, but it may

recover damages only under one of those statutes." *J & J Sports Prods., Inc. v. Resendiz*, 2009

WL 1953154, at *1 (N.D. Ill. July 2, 2009) (citing *United States v. Norris*, 88 F.3d 462, 469 (7th

Cir. 1996)); *see also, J & J Sports Prods., Inc. v. Broadway Baby of Wisconsin, Inc.*, 2013 WL

238850, at *2 (E.D.Wisc. Jan. 22, 2013) (same). "The remedies are mutually exclusive; § 605

applies to the unlawful interception of cable programming transmitted through the air, while §

553 applies to the unlawful interception of cable programming while it is being transmitted over

a cable system." *Resendiz*, 2009 WL 1953154, at *1. For this reason, in its briefs, J & J Sports

focuses its arguments on seeking damages under § 605 and states that "it is proper for this Court

to award judgment and damages pursuant to . . . § 605." Plaintiff's Memorandum, p. 5. Recall that under § 605, "a claimant may elect actual damages or statutory damages. Statutory damages for each violation of § 605 range from $1,000 to $10,000, as the court considers just." J & J Sports also seeks additional damages of $100,000.00, commonly referred to as "enhanced damages," which are punitive in nature and are available (again, at the Court's discretion) under § 605(e)(3)(C)(ii).[7] Accordingly, the Court will determine damages in this case pursuant to § 605.[8]

---

[7] "Although the term 'enhanced' does not appear in the statute, courts have characterized the damages under § 605(e)(3)(C)(ii) as 'enhanced' damages." *J & J Sports Prods. v. Ramirez*, 2015 WL 5020096, at *7 n. 2 (E.D. Cal. Aug. 21, 2015) (citations omitted).

[8] It is fair to note that "[t]here is a split of authority as to whether § 605 covers both cable and satellite piracy. The majority view is that § 553 and § 605 are mutually exclusive." *J & J Sports Productions, Inc. v. Brady*, 2016 WL 6958141 *4, n. 2 (10th Cir. Nov. 29, 2016) (listing cases addressing this issue). Courts in this circuit adhere to the majority view, as noted above. Ultimately, it doesn't matter, since the Court's damage award in this case is well below the amount permitted under either statute. As one court noted:

> One oft-cited reason for applying § 605 instead of § 553 in these cases is because '§ 605 provides for a greater potential recovery of damages than § 553. Moreover, § 605 permits prevailing plaintiffs to recover their costs and attorneys' fees as a matter of right, whereas prevailing parties under § 553 may recover such only if a trial judge issues such an order.' *TCI Cablevision of New England v. Pier House Inn, Inc.*, 930 F.Supp. [727,] 732 (D.R.I. 1996). In this case, however, the choice of which provision to apply does not affect the Court's calculation of statutory damages since the allegations did not justify an award even approaching the statutory limits under either provision. Thus, although the Court chooses to apply § 605 in this case, it awards an amount of statutory damages that would be permissible under *either* § 605 or § 553's statutory cap.

*Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1199 (N.D. Cal. 2000).

One of our sister courts recently discussed the damages provisions of § 605, explaining as

follows:

> A claimant entitled to relief under § 605 may elect actual or statutory damages
> pursuant to § 605(e)(3)(C)(I). Plaintiff has elected statutory damages, which range
> from a minimum of $1,000 to a maximum of $10,000, in the discretion of the
> court. 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff also seeks enhanced damages for a
> willful violation. Section 605 permits enhanced damages of up to $100,000, in the
> discretion of the court, where the defendant has exhibited disregard for the
> governing statute and indifference to its requirements. See, e.g., *Kingvision* [*Pay-
> Per-View, Ltd. v. Scott E's Pub., Inc.*],146 F.Supp.2d [955,] 959–61 [E.D.Wisc.
> 2001]. . . .
>
> . . . There are various ways in which courts have gone about calculating statutory
> and enhanced damages for violations of § 605:
>
>> Some courts have assessed statutory damages using as a yardstick the
>> number of patrons in the establishment viewing the show. *See, e.g.*, [*Time
>> Warner Cable of N.Y. City v.*] *Googies Luncheonette, Inc.*, 77 F.Supp.2d
>> [485,] 489 [(S.D.N.Y. 1999)] (listing cases); *Time Warner Cable v. Taco
>> Rapido Rest.*, 988 F.Supp. 107, 111 (E.D.N.Y. 1997) (same). Some courts
>> have awarded a flat sum for each violation. *See, e.g.*, *Googies Luncheonette,
>> Inc.*, 77 F.Supp.2d at 489–90 (listing cases); [*Time Warner Cable of N.Y.
>> City v.*] *Taco Rapido Rest.*, 988 F.Supp. [107,] 111 [(E.D.N.Y. 1997)]
>> (same). A multiplier has been used in cases of willful violations. *See, e.g.*,
>> *Googies Luncheonette, Inc*., 77 F.Supp.2d at 491 (recommending for willful
>> violation an additional three times the base statutory damages award for one
>> defendant, an additional four times the award for another defendant, and an
>> additional eight times the award for a third defendant); *Cablevision Sys.
>> Corp. v. Maxie's N. Shore Deli Corp.*, . . . 1991 WL 58350, *2 (E.D.N.Y.
>> 1991) (awarding an additional amount for willful violation in the amount of
>> five times the initial statutory damages award).

*Kingvision*, 146 F.Supp.2d at 960. The court in *Kingvision* calculated the statutory
damages based upon the rate the plaintiff charged its customers for the right to
exhibit the program, which in turn was based upon the maximum fire code
occupancy of the building in which the exhibition was to take place.

Here, Plaintiff has provided its rate card indicating what it would charge to permit
the defendants to show its fight program based on the maximum capacity of the

facility where the event is broadcast.

*J & J Sports Productions, Inc. v. Sangria's Mexican Grill 2 LLC*, 2015 WL 5824900 at *3

(E.D.Wis. Oct. 6, 2015). In *Sangria's*, the court awarded J & J Sports statutory damages in the

amount of $2,200.00, the amount Sangria's would have paid to acquire the rights to the Program

had the bar purchased those rights legitimately. *Id*. The Defendants in this case would have paid

that same amount–$2,200.00–had they legitimately purchased the Program from J & J Sports.

Gagliardi Aff. (DE 22-1), Exh. 1 (Rate Card for September 14, 2013).

It is well established that the district courts have broad discretion to determine awards in

cases like this. *See J & J Sports Productions, Inc. v. Turrubiartes*, 2013 WL 3878740 at * 2

(S.D.Ind. July 26, 2013); *J & J Sports Prods., Inc. v. Elonia Garcia, Bly, Inc*., 2016 WL

4479516, at *2 (S.D. Ind. Aug. 24, 2016) ("the amount awarded is based on the court's discretion

to arrive at a just amount to compensate for the violation). To aid the Court, J & J Sports cites

many cases wherein courts across the country have calculated damage awards in piracy cases

such as this. Plaintiff's Memorandum, pp. 12-16; Plaintiff's Reply, pp. 3-5. Not surprisingly,

most of the cases cited and discussed by J & J Sports involved large damage awards, which of

course the company is asking for in this case. But this Court must consider many factors before

arriving at a fair and reasonable award.

As the Defendants point out, some courts use a "'per patron rate' for calculating statutory

damages. Statutory damages can be calculated using a per patron rate or a flat sum." Plaintiff's

Reply, p. 3 (citing *Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F.Supp.2d 1179, 1184 (D.

Colo. 2008)). Some courts base damage awards on the amount the offending establishment

*would* have paid had it acquired the broadcast legitimately by purchasing it from the license

holder in the first place. J & J Sports is not keen on the idea of the Court using the "per patron" formula in the present case. According to J & J Sports, "in the instance of 12 to 16 patrons as in this case, a damage award based on this limited number of patrons would certainly do little to prevent such unlawful conduct in the future." Plaintiff's Reply, p. 3. Indeed, many courts have rejected the "per patron" formula in favor of a larger "flat sum" award, recognizing that deterrence of future violations is one of the key objectives of the piracy statutes. This Court did exactly that in both *Estrella* and *Ramirez*, although based on different circumstances.

The Defendants, on the other hand, contend that a "per patron" formula is exactly the correct damages formula to use in this case and cite the case of *J & J Sports Productions, Inc. v. Kotsopoulos*, 2016 WL 1388072 (N.D. Ind. April 8, 2016), in support of their argument. In *Kotsopoulos*, this Court (Magistrate Judge Susan L. Collins) determined that the defendant establishment, which showed a "pirated" J & J Sports program to about 90 people on three television screens, should pay statutory damages of $7,200.00, a sum that was calculated by multiplying 90 people times a "per patron" rate of $80.00. *Id*. at * 2 (citing cases in which the "per patron" formula was applied and an $80.00 per person rate was deemed reasonable). If the same formula is used in this case, the damage award would total $1,280.00, which is the amount the Defendants ask this Court to impose. Defendants' Response, p. 6.

While it is true that many courts employ the "per patron" formula, the Defendants neglect to note that in *Kotsopoulos*, J & J Sports expressly asked the Court to use that formula, i.e., the company agreed that in that particular case the "per patron" formula resulted in a reasonable calculation of damages. But the company argues that the "per patron" formula is *not* proper in this case (or other cases where the broadcast is shown to a very small number of people) because

14

"[w]here there are 90 patrons in the establishment at the time of broadcast a 'per patron rate' of damages calculation is more appropriate[.]" Plaintiff's Reply, p. 3. In a nutshell, J & J Sports is contending that an award of $1,280.00 is too paltry an amount to compensate the company or act as an effective deterrent to these Defendants and other people who might be inclined to engage in such conduct. The Court agrees that the Defendants' proposed amount is too low, but also concludes that the facts do not warrant the imposition of the maximum award requested by J & J Sports.

While neither party discusses it in their briefs, the case of *J & J Sports Productions, Inc. v. Carranza*, 2015 WL 1417894 (S.D. Ind. March 27, 2015), is factually similar, analytically instructive, and in some instances directly on point as to issues raised in this case.[9] In *Carranza*, the defendant purchased the J & J Sports' broadcast of the Floyd Mayweather, Jr., versus Victor Ortiz boxing match and showed it to about 35 people at an after-hours, private birthday party held at the defendant's bar and restaurant known as Los Chilaquiles. The problem was that the defendant, who was the owner of Los Chilaquiles, purchased the fight on his residential account at a drastically lower rate than he would have paid to purchase it for his commercial establishment. The defendant did not advertise the fight, charge a cover charge to guests who were present, or charge any money for food or drink. The defendant had never shown a "pirated" broadcast before or since. The defendant conceded liability and argued that the amount of

---

[9] J & J Sports is obviously familiar with the *Carranza* case, given that the company was the plaintiff in that case and was represented by the same law firm appearing in this case. But of course, the *Carranza* case is not exactly helpful when J & J Sports is trying to argue for maximum damage awards and so it makes sense that Plaintiff's counsel would not want to cite or discuss *Carranza*. But while the *Carranza* case might not be helpful to J & J Sports, it is helpful to the Court.

damages awarded should be lower based on the facts and circumstances of the case, while J & J Sports, as it is doing here, sought the maximum amount of statutory damages. The court instead awarded statutory damages of $4,400.00, which was twice the amount of the licensing fee Carranza and Los Chilaquiles would have paid if they had purchased the fight legitimately as a commercial establishment. *Carranza*, 2015 WL 1417894 at *5.

There is another important factor the Court must consider, and it is usually the most challenging aspect of cases like these. While defendants who "pirate" licensed broadcasts should be made to pay up, the Court is also charged with balancing equities; that is, with fashioning an award that compensates the Plaintiff without impairing the Defendants' ability to continue operating their business. "[C]ourts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Sangria's*, 2015 WL 5824900 at * 3 (quoting *Joe Hand Prods. v. Kaczmar*, 2008 WL 4776365, at *2 (N.D.Ill. Oct. 29, 2008)). This factor becomes magnified when the defendants are small business owners, as is the case here, whose businesses could be crushed even by the imposition of what J & J Sports might consider a paltry amount. At the same time, the strict liability nature of the applicable statutes and their mandate that courts impose some amount of damages for violations presents a Solomon-like dilemma for the Court.

In this instance, the Defendants would have paid $2,200.00 for the Program and J & J Sports is clearly entitled to receive that amount of compensation. Based on the factual circumstances of this case, the Court grants an award of statutory damages in the amount of $3,200.00. This amount includes the original licensing fee of $2,200.00 and an additional award

of $1,000.00, the latter amount being equivalent to the *minimum* that can be imposed under § 605(e)(3)(C)(i)(II). The award is slightly lower than that awarded in *Carranza*, because in that case the defendant's willfulness was clear, seeing as he had intentionally and *personally* purchased a J & J Sports' licensed program at a low residential rate, had a nephew bring the defendant's home television receiver into the establishment, and then broadcast the fight to his guests. The reasoning in *Carranza* applies here, and the Court concludes that a statutory damage award of $3,200.00 is appropriate under the specific facts of this case. The Court concludes that this award will compensate J & J Sports while also serving a deterrent effect. A greater award is simply not supported by the evidence or circumstances of this case.

## II. Enhanced Damages.

Section 605 provides in part as follows:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 or each violation[.]

47 U.S.C. § 605(e)(3)(C)(ii). In this case, J & J Sports is asking for the maximum award of $100,000.00, while the Defendants argue that no enhanced award should be imposed under the circumstances of this case. The Court agrees with the Defendants' position for two reasons. First, the Defendants have raised a fact issue as to willfulness, which goes directly to the issue of enhanced damages. Second, J & J Sports has failed to establish that the Defendants' actions were done "for purposes of . . . commercial advantage or private financial gain," an element that must be proven before enhanced damages can be imposed. If the Defendants are fibbing and really did intend to reap financial benefit from their conduct, they didn't do a very good job at it, given the

very small amount of money they took in that night. But the fact that the Defendants made so little money is more likely the result of undisputed–and mitigating–factors, including the lack of any advertising for the fight and the fact that the 15 or so people who were present at Santa Anita Family Grill were not made to pay a cover charge. It is also undisputed that this was the Defendants' only violation of the piracy statutes.

Both *Sangria's* and *Carranza* are again instructive on the issue of enhanced damages. In *Sangria's* the court explained as follows:

> As I have already concluded that Defendant Sangria's violation was willful within the meaning of the statute, I now turn to the question of what amount of enhanced damages is appropriate. The only guidance the statute itself gives courts in assessing damages for willful violations is that they not exceed $100,000 for violations of § 605 and $50,000 for violations of § 553. 47 U.S.C. § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(i)(II). In order to arrive at an enhanced damage figure, courts have considered factors such as: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. *Joe Hand Prods. v. Kaczmar*, . . . 2008 WL 4776365, at *2 (N.D.Ill. Oct. 29, 2008) (citations omitted). Beyond these factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense) ." *Id.*

*Id.*, 2015 WL 5824900 at * 3. Judge Griesbach concluded that while Sangria's was a small establishment (with an occupancy of 40) and likely "did not receive substantial financial gains as a result of [the] piracy[,]" it was still important to impose enhanced damages to "deter future violations." *Id*. To that end, Judge Griesbach awarded enhanced damages of $6,600, three times the amount of statutory damages he imposed. This Court, relying in part on *Sangria's*, used the same method of calculating enhanced damages in two recent cases involving J & J Sports. *See J & J Sports Productions, Inc. v. Estrella*, WL 6449518 (N.D.Ind. Oct. 23, 2016); *J & J Sports*

*Productions, Inc. v. Ramirez*, No. 1:15-CV-258 (N.D.Ind. Dec. 19, 2016). In both of those cases,

this Court awarded enhanced damages of $6,600.00, for the same reasons articulated in

*Sangria's*. There is an important difference between *Estrella* and *Ramirez* and the present case,

however. In both of those prior cases, the defendants did not respond to J & J Sports' motion for

damages, and the willfulness of their conduct was established, either by default or, in the case of

*Estrella's*, when requests for admissions went unanswered. In the present case, the Defendants

have not only responded but also presented argument specifically directed at the damages issue.

This permits the Court to fashion an award that takes into account the known circumstances in

this case. In *Estrella* and *Ramirez* the Court did not have the benefit of any input from the

defendants and so based its award on factually similar cases. In this instance, the most similar

case is *Carranza*.

      In *Carranza*, the court declined to impose enhanced damages. The court first noted that

the factors to be considered when determining whether to award enhanced damages include "'(1)

the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's actual

damages; (4) whether defendant advertised for the event; and (5) whether the defendant collected

a cover charge on the night of the event.'" *Carranza*, 2015 WL 1417894 at *5 (quoting *J & J

Sports Productions, Inc. v. McCausland*, 2012 WL 113786 (S.D. Ind. Jan. 13, 2012)). The court

concluded that the facts did not support an award of enhanced damages since the defendant's

conduct was a first violation and there was no evidence that the defendant reaped any financial

benefit from his conduct. *Id*. In support of its analysis and conclusion, the court in *Carranza* cited

the case of *J & J Sports Productions, Inc., v. Pombo*, 984 F.Supp.2d 1042 (E.D. Cal. 2013),

another case in which the court declined to impose enhanced damages where the defendants

showed a J & J Sports' broadcast to family and friends, no one paid any cover fee nor were they charged for food or drinks, the broadcast was shown on only one television set, and the defendants did not advertise the event. As one district court pointed out, "enhanced damages are analogous to punitive damages, as they are awarded at the Court's discretion in cases where a defendant's actions are willful and for the purpose of financial gain." *J & J Sports Productions, Inc. v. Garcia*, 2013 WL 636707 at *4 (E.D.Cal. Feb. 13, 2013) (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 580 (1996)).

The present case is factually more akin to *Carranza* and *Pombo* than *Sangria's*, in that only about 15 people were present in Santa Anita Family Grill on the night of the fight, the Defendants did not advertise the fight, charge a cover charge, or make any other attempts at financial gain from showing the fight, their gross receipts for the entire evening totaled just over $325.00, and there is no evidence to suggest that the Defendants have violated the "piracy" statutes before or since September 14, 2013.

Having considered the applicable legal standards and the parties' arguments and evidence, the Court concludes that J & J Sports is not entitled to enhanced damages as a matter of law, and the company's motion for summary judgment is denied as to that claim.

**III. Attorney's fees and costs.**

As to J & J Sports' request for attorney's fees and costs, the Defendants state in their brief, curiously, that "[t]his issue was not extensively reviewed." *Id*. The Court takes this to mean the Defendants are not challenging the reasonableness of Plaintiff's counsel's request (which is a meager amount compared to the tens of thousands of dollars in compensatory and enhanced damages J & J Sports is seeking). The Court will grant the request anyway, given that J & J

Sports is entitled to recover these expenses and because the amount requested is quite reasonable.

J & J Sports is asking for an award of $945.75 for attorneys' fees and costs of $580.00 incurred in pursuing this lawsuit. "Under 47 U.S.C. § 605(e)(3)(B), if a violation of the section is found, attorneys' fees and costs are mandatory." *Sangria's*, 2015 WL 5824900 at *3. In support of this request, J & J Sports' counsel submitted his affidavit detailing the fees and costs incurred in the course of this litigation. Affidavit of Kyle A. Cooper (DE 21-4). The request for costs includes the court filing fee of $400.00 and service of process fees of $180.00. The court has reviewed the affidavit and finds the request for fees and costs to be reasonable under the circumstances of this case, both in terms of the hourly rate charged by Plaintiff's counsel ($195.00 per hour) and the number of hours expended on this litigation (a shockingly low 4.85 hours from inception through the filing of the Plaintiff's reply brief). Accordingly, the court awards J & J Sports the sum of $1,525.75 in attorney's fees and costs.

### IV. Conversion and punitive damages.

J & J Sports' request for punitive damages is not based on statute. J & J Sports included an Indiana state law claim for conversion in its Complaint, which entitles a plaintiff to request punitive damages. Complaint, pp. 6-7. J & J Sports presents no argument on the conversion claim or request for punitive damages in its memorandum in support of its motion. In fact, the company doesn't even mention it–in that brief or in its reply brief. Once again, the court in *Carranza* addressed this same issue, writing as follows: "[T]he court notes that J & J Sports's complaint includes a tort claim for conversion, and it seeks a final judgment for damages in connection with its summary judgment motion. . . . But its motion and brief do not mention this claim, so it 'fails absent a developed analysis of the conversion issue.'" *Carranza*, 2015 WL

1417894 at * 2 (citing *J & J Sports Productions, Inc. v. Zarco*, 2013 WL 4829222 at *4 (S.D.Ind. Sept.9, 2013)) (citing in turn, *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012)) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived."). For that reason, the court in *Carranza* dismissed J & J Sports' conversion claim with prejudice. *Id.* at *6. In *Zarco*, the court denied summary judgment to J & J Sports on its conversion claim because the "Plaintiff fail[ed] to address this issue in its brief." *Zarco,* 2013 WL 4829222 at *6. It is also important to note that the court in *Zarco* concluded that J & J Sports was not entitled to pursue its conversion claim since "the Court finds that § 553 or § 605 adequately address the unlawful interception issues presented by Plaintiff." *Id.* at *4. Other courts have also questioned whether J & J Sports can recover anything on a state law conversion claim in cases of signal piracy. *See J & J Sports Prods., Inc. v. Elonia Garcia, Bly, Inc.*, 2016 WL 4479516, at *3, n. 3 (S.D. Ind. Aug. 24, 2016) ("it is unlikely that J & J could recover for its conversion claim while also recovering damages under 47 U.S.C. § 553 or § 605 under these circumstances because additional damages would constitute a double recovery.") (citing *J & J Sports Prods., Inc. v. Gonzales*, 2013 WL 4777209, at *4 (S.D. Ind. Sept. 5, 2013)). This Court finds that J & J Sports' motion for summary judgment should be denied as to the company's conversion claim for the same reasons.

As goes J & J Sports' conversion claim, so goes its punitive damages claim, as the latter has no legal foundation absent the former. Even assuming J & J Sports could somehow concoct a legal basis for its claim for punitive damages, the company presents no evidence that it is entitled to them. The company's request for punitive damages is based on its contention that the Defendants committed conversion by intercepting the company's broadcast, that their actions

were intentional, and that they should be severely punished for their egregious conduct. But argument alone is an insufficient basis for the imposition of punitive damages even if the Court were inclined to entertain the request, which it is not.

"Punitive damages are designed to punish the wrongdoer and to discourage him or her and others from similar conduct in the future." *Kalwitz v. Kalwitz*, 934 N.E.2d 741, 753-54 (Ind.Ct.App. 2010) (citing *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 582 (Ind.Ct.App. 2003)). It is also important to note that "proof that a tort was committed does not necessarily establish the right to punitive damages." *Gresser v. Dow Chem. Co.*, 989 N.E.2d 339, 349 (Ind.Ct.App. 2013) (citing *Williams v. Younginer,* 851 N.E.2d 351, 358 (Ind.Ct.App. 2006)). "Punitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Id.*

As with its conversion claim, J & J Sports did not bother to address its claim for punitive damages in its briefs, has not established that it has a legal basis for seeking punitive damages (and many recent court opinions suggest it can't), and did not present any evidence or argument that it is entitled to them. "Where, as here, the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citations omitted). "If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Id.*

For all of the reasons just discussed, the Court concludes not only that J & J Sports'

motion for summary judgment must be denied as to the company's claims for conversion and

punitive damages, but that dismissal of those claims is also warranted, just as it was in *Carranza*.

There is another basis for ruling against J & J Sports' and dismissing the company's

claims for enhanced damages, conversion, and punitive damages. Denying a party's motion for

summary judgment "normally will leave the movant in essentially the same position,

procedurally, that it would have been in had it not requested summary judgment in the first

instance." *Hotel 71*, 778 F.3d at 601. That is, the denial of J & J Sports' motion on the issues of

enhanced damages, conversion, and punitive damages would normally have the effect of putting

the company to its burden of proof on those claims at trial. However, the Court can also choose

to enter summary judgment *against the movant* if circumstances warrant it. Fed.R.Civ.P. 56(f).

As the Seventh Circuit in *Hotel 71* explained:

> If the court moves on to entertain the prospect of entering summary judgment
> against the unsuccessful movant, whether in response to a cross-motion for
> summary judgment or on its own initiative, then the court must be mindful of its
> obligation to adopt what Judge Shadur aptly characterizes as a dual, "Janus-like"
> perspective. *See, e.g., Shiner v. Turnoy*, 29 F.Supp.3d 1156, 1160 (N.D.Ill. 2014).
> That is, the court must now grant the unsuccessful movant all of the favorable
> factual inferences that it has just given to the movant's opponent. *See R.J. Corman
> Derailment Servs., LLC v. Int'l Union of Operating Engrs., Local Union 150,
> AFL-CIO*, 335 F.3d 643, 647-48 (7th Cir. 2003). Only if the court can say, on that
> sympathetic reading of the record, that no finder of fact could reasonably rule in
> the unsuccessful movant's favor may the court properly enter summary judgment
> against that movant. *E.g., O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630
> (7th Cir. 2011).

*Id*. at 603. That is precisely the case here. Even drawing all reasonable inferences in favor of J &

J Sports, as opposed to the Defendants, the Court reaches the same conclusion–that the Plaintiff's

claims in this case for enhanced damages, conversion, and punitive damages are not supported by

the evidence or even by the Plaintiff's arguments (which, again, are nonexistent as to conversion and punitive damages).

Normally, "whenever it entertains the possibility of summary judgment against a party *sua sponte*, the court must afford the party notice of that possibility and a reasonable opportunity to respond. . . . This includes the chance to marshal evidence and argument in opposition to summary judgment, even where, as here, the party has already sought and failed to obtain summary judgment in its favor." *Id*. at 603 (citations omitted). But there is yet another wrinkle, as the Seventh Circuit pointed out when it noted that "there are cases in which the parties are in agreement (or it is otherwise clear) as to what the relevant facts are, and the only dispute is over how those facts are to be characterized. When such cases present claims as to which there is no right to a jury trial (or the party opposing summary judgment against whom summary judgment is contemplated has not asked for one), placing the judge in the role of factfinder, it may be appropriate for the court to resolve the characterization dispute on summary judgment notwithstanding the fact-bound nature of that dispute." *Id*. at 603-04. In this case, neither party has requested a jury, placing the Court in the position of fact-finder. But the only material issue in dispute in this case is the issue of the Defendants' willfulness, and even if the Court were to reject the Defendants' assertion of lack of willfulness it would not change the outcome. So what if the Defendants are lying and knew all along that they were pirating J & J Sports' Program? They have been punished for their conduct by the imposition of statutory damages, which total $3,200.00. J & J Sports likely considers this amount a pittance, but the Court concludes that it is fair and reasonable under the facts and circumstances of this case and that imposing additional "enhanced" damages is unwarranted. And, as to conversion and punitive damages, judgment

*against* J & J Sports is still appropriate since the Court concludes that the state law claim for conversion, and therefore the punitive damages claim that flows from it, is not a viable claim in the first place under the law of this circuit. For all of these reasons, J & J Sports' claims for enhanced damages, conversion, and punitive damages should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, the Plaintiff's motion for summary judgment (DE 17) is GRANTED in part and DENIED in part. The Clerk of the Court is directed to enter judgment in favor of the Plaintiff and against the Defendants in the amount of $4,725.75, consisting of statutory damages of $3,200.00 and attorney's fees and costs in the amount of $1,525.75. The motion is DENIED as to the Plaintiff's claims for enhanced damages, conversion, and punitive damages, and those claims are DISMISSED WITH PREJUDICE.

Date: January 24 , 2017.

    /s/ William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana